**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MAXIMO A. REYES-VASQUEZ,

      Petitioner,

      v.

UNITED STATES ATTORNEY
GENERAL, EMBASSY OF THE
REPUBLIC DOMINICAN, & REPUBLIC
OF SANTO DOMINICO,

      Respondents.

NO. 3:07-CV-1460

(JUDGE CAPUTO)

(MAGISTRATE JUDGE MANNION)

### MEMORANDUM

Presently before the Court is Magistrate Judge Malachy E. Mannion's Report and

Recommendation (Doc. 4), and Petitioner's Objections to the September 14, 2007 Report

and Recommendation. (Doc. 5.)  The Magistrate Judge recommended that the Court

dismiss the Petitioner's petition for a writ of habeas corpus. (Doc. 4.)  For the reasons set

forth below, Petitioner's Objections to the Magistrate Judge's Report and

Recommendation will be overruled, and the Court will adopt the Report and

Recommendation and dismiss the Petitioner's petition for a writ of habeas corpus.

### BACKGROUND

The Petitioner, Maximo A. Reyes-Vasquez, is a prisoner at the Federal

Correctional Institute Allenwood ("FCI-Allenwood") in White Deer, Pennsylvania.  (Pet. at

1, Doc. 1.)  On March 7, 1991, an arrest warrant for the Petitioner was issued by

Magistrate Judge Naomi Reice Buchwald of the U.S. District Court for the Southern

1

District of New York for racketeering, drug trafficking, and related offenses.  (*Id.* at 2.)  A second warrant for these offenses was later issued by the same court on September 11, 1991.  (*Id.*)  On July 10, 1997, the Embassy of the United States of America requested the extradition of Petitioner Reyes-Vasquez pursuant to the Extradition Treaty between the United States and the Dominican Republic of June 19, 1909.  (Pet. Ex. A.)  The President of the Dominican Republic, Leonel Fernandez, signed a decree to extradite the Petitioner on August 12, 1997.  (Pet. Ex. E.)  On August 13, 1997, the Petitioner was transported from the Dominican Republic to the United States, at which time he was placed under arrest.  (Pet. at 2.)   The Petitioner pled guilty to racketeering pursuant to RICO and conspiracy to murder.  (*Id.* at 2.)  The Petitioner was sentenced to twenty (20) years incarceration on the RICO count, to run consecutively with a ten (10) year sentence on the conspiracy to murder count.  (*Id.*)

Petitioner, proceeding *pro se*, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on August 8, 2007.  (Doc. 1.)   On September 14, 2007, Magistrate Judge Mannion issued the present Report and Recommendation (Doc. 4), recommending that the Petitioner's petition for a writ of habeas corpus be dismissed. Petitioner filed an objection to the Report and Recommendation on September 27, 2007. (Doc. 5.)  The Report and Recommendation is ripe for disposition.

## LEGAL STANDARDS

### I.      Review of a Magistrate Judge's Report and Recommendation

Where objections to the magistrate judge's report are filed, the Court must conduct

2

a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d

1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)), provided the objections

are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).  In making its

*de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual

findings or legal conclusions of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1); *Owens*

*v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).  Although the review is *de novo*, the

statute permits the Court to rely on the recommendations of the magistrate judge to the

extent it deems proper.  *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980);

*Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D.

Pa. 1994).  Uncontested portions of the report may be reviewed at a standard determined

by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at

7.  At the very least, the Court should review uncontested portions for clear error or

manifest injustice.  *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

**II.      Dismissal of Petition for Writ of Habeas Corpus**

This Court considers the present writ of habeas corpus pursuant to 28 U.S.C. §

2243, which states:

> A court, justice or judge entertaining an application for a writ of
> habeas corpus shall forthwith award the writ or issue an order
> directing the respondent to show cause why the writ should
> not be granted, unless it appears from the application that the
> applicant or person detained is not entitled thereto.

*Id.*  Magistrate Judge Mannion recommended that this petition be dismissed *sua sponte*

due to lack of standing pursuant to this section, in that the detained Petitioner is not

entitled to a writ of habeas corpus to test the legality of his detention.  In *Lonchar v.*

*Thomas*, 516 U.S. 314, 320 (1996), the Supreme Court stated that "a district court is authorized to dismiss a petition summarily when 'it plainly appears from the face of the petition and any exhibits annexed to it that he petitioner is not entitled to relief in the district court. . . .'" *Id.* (quoting Rules Governing § 2554 Cases, Rule 4, 28 U.S.C. § 2554).

## DISCUSSION

In the instant case, the Petitioner challenges his extradition to the United States from the Dominican Republic. The only issue that a petitioner may properly raise regarding his extradition in a writ for habeas corpus is whether "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2441(c)(3). In his petition, the Petitioner alleges that he was unlawfully extradited in contravention of the Dominican Republic's national law.

President Fernandez's extradition decree notes that "while it is certain that Law number 489 of October 22, 1969, on Extradition, prohibits in its article number 4 the handing over of Dominican citizens requested for extradition by another country, it has been argued in earlier resolutions and by a considerable body of the country's legal opinion, that the international obligations assumed by the State cannot be rejected on the basis of considerations deriving from domestic law." (Pet. Ex. E.) Therefore, Petitioner claims that there is a issue as to whether the Petitioner was lawfully extradited pursuant to the laws of the Dominican Republic.

The act of state doctrine holds that "American courts are precluded from 'inquiring into the validity of the public acts a recognized foreign sovereign power committed within

4

its own territory.'" *Gross v. German Foundation Indus. Initiative*, 456 F.3d 363, 391 (3d

Cir. 2006) (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964)).

The American court must dismiss an action when the "resolution of the suit would require

the court to declare invalid and ineffective as 'a rule of decision for the courts of this

country' the act of a foreign sovereign." *Id.* (citations omitted).   In this case, determining

whether the President of the Dominican Republic may lawfully authorize an extradition

despite the prohibition of the extradition under Dominican law is a question for the courts

of the Dominican Republic.  *See Banco Nacional de Cuba,* 376 U.S. at 416-20.

Essentially, the Petitioner is requesting that this Court determine the validity of the

President's acts, which were committed within the Dominican Republic.

Generally, federal courts are to abstain from determining challenges to a foreign

states domestic law.  "Every sovereign state is bound to respect the independence of

every other sovereign state, and the courts of one country will not sit in judgment on the

acts of the government of another, done within its own territory."  *Id.* (quoting *Underhill v.*

*Hernandez*, 168 U.S. 250, 252 (1897)).  This Court must respect the independence of the

Dominican Republic, and cannot declare that the laws of the Dominican Republic were

violated by the Petitioner's extradition.  Therefore, the Petitioner lacks standing to file a

petition for a writ of habeas corpus.

Even presuming that the Petitioner is challenging the interpretation of the treaty,

rather than the interpretation of Dominican law, treaties are agreements between nations,

and therefore an individual ordinarily may not challenge the interpretation of the treaty in

the absence of an express provision of the treaty or an act brought by one of the

signatory nations.  *United States ex rel. Saroop v. Garcia*, 109 F.3d 165, 167 (3d Cir. 1997).  Thus, either the rendering state must object to the demanding state's actions or the treaty must expressly allows the challenge by an individual.  *Id.* at 167-68.  In the present case, the Dominican Republic has not objected to the Petitioner's extradition nor his prosecution.  *See generally United States v. Riviere*, 924 F.2d 1289 (3d Cir. 1991) (holding that the extradited person could not assert rights under the treaty in light of the express waiver by the Commonwealth of Dominica).  In fact, the Dominican Republic expressly authorized and consented to the Petitioner's extradition to the United States by the President's decree extraditing the Petitioner. (Pet. Ex. E.)

Furthermore, the treaty's terms do not permit the Petitioner to challenge his extradition and prosecution.  The Petitioner's extradition occurred pursuant to the Convention between the United States and the Dominican Republic, June 19, 1909, 36 Stat. 2468, which contains no express provision for an individual to challenge the interpretation of the treaty.

In Petitioner's Objections, he claims that the treaty between the United States and the Dominican Republic is invalid.  An extradited person may challenge the validity of an extradition treaty pursuant to *Saroop*.  *Saroop*, 109 F.3d at 168.  However, such an argument must fail.  "When determining whether two nations have entered into an extradition treaty, courts usually defer to the intentions and actions of each nation's executive branch."  *Id.* at 170 (citing *Terlinden v. Arnes*, 184 U.S. 270, 290 (1902)).  Here, the President's actions are dispositive, in that he signed the decree to extradite the Petitioner.  The President's conduct demonstrates that the Dominican Republic viewed its treaty with the United States to be valid.

The Petitioner further claims that he was unlawfully abducted, and therefore should not have been subject to prosecution by the U.S. District Court for the Southern District of New York.  In *Ker v. People of the State of Illinois*, 119 U.S. 436 (1886), the defendant claimed that he was kidnaped and brought into the United States against his will, where he was convicted of larceny.  *Id.* at 438-39.  The Court held that

> The question of how far his forcible seizure in another country, and transfer by violence, force, or fraud to this country, could be made available to resist trial in the state court for the offense now charged upon him, is one which we do not feel called upon to decide; for in that transaction we do not see that the constitution or laws or treaties of the United States guaranty him any protection.  There are authorities of the highest respectability which hold that such forcible abduction is no sufficient reason why the party should not answer when brought within the jurisdiction of the court which has the right to try him for such an offense, and presents no valid objection to his trial in court.

*Id.* at 444 (citations omitted).  The Court further held that the defendant was not without redress, as the party guilty of the kidnap could be tried in the courts of Peru for violation of that country's laws.  *Id.*  The Court has upheld this holding, finding that "the power of a court to try a person for crime has not been impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.'" *See Frisbie v. Collins*, 342 U.S. 519, 522 (1952); *United States v. Alvarez-Machain*, 504 U.S. 655, 661 (1992).  Thus, when a person is forcibly abducted from a foreign state, he is still subject to the federal court's jurisdiction.  Such a person may be subjected to potential prosecutions, unless the extradition treaty expressly prohibits forcible abductions.  *Alvarez-Machain,* 504 U.S. at 661-63, 670.

In this case, the extradition treaty between the United States and the Dominican

Republic has no such provision regarding the manner in which a person must be

extradited.  The Petitioner argues that because forcible abductions are prohibited by

international law, there would be no reason to include such a provision in a treaty.

However, the law mandates that a person is still subject to a court's jurisdiction even

following a forcible abduction, unless the treaty expressly creates a provision against

forcible abductions.  If a treaty does not prohibit forcible abductions, the Court may no

imply such a provision.  *Id*. at 666-69 (discussing that a court may not imply a provision in

a treaty against forcible abduction).  Thus, even presuming the Petitioner was forcibly

abducted, his abduction did not violate an express provision of the treaty between the

United States and the Dominican Republic.  As such, the rule of *Ker* applies, and the U.S.

District Court for the Southern District of New York had jurisdiction over the Petitioner,

where he was amenable to prosecution.

Finally, the Petitioner argues in his Objections that he plead guilty to a different

Indictment than the one that used in his extradition.  However, the Petitioner does not

allege such a claim in his petition for a writ of habeas corpus.  The Extradition Treaty

between the United States and the Dominican Republic clearly states that "No persons

shall be tried for any crime or offence other than that for which he was surrendered."

Convention between the United States and the Dominican Republic, art. IV, June 19,

1909, 36 Stat. 2468.  The Supreme Court in the *United States v. Rauscher*, 119 U.S. 497,

509 (1886), similarly held that individuals extradited under a treaty between Great Britain

and the United States could only be tried for the specific offenses for which the extradition

was sought, pursuant to the "rule of specialty."  In *Johnson v. Browne*, 205 U.S. 309

(1907), the Supreme Court reaffirmed this rule of international law in a petition for writ of

habeas corpus.

Although both Supreme Court case law and the treaty between the United States and the Dominican Republic provide that no person shall be tried for a crime or offense other than that for which he was surrendered, the Petitioner does not claim that he was tried for any other crime or than that for which he was surrendered.  Rather, he claims that the indictment used in his extradition was different from the one he was tried on.  Upon request for extradition, the United States Embassy noted that the Petitioner was being charged with "(1) one count of conducting or participating in racketeering activity (murders); (2) one count of conspiring to conduct or participate in racketeering activity; (3) one count of conspiracy to traffic in cocaine; and (4) one count of engaging in a continuing criminal enterprise."  (Pet. Ex. A.)  In the petition, the Petitioner states that the "Original Extradited Indictment S3-91358 was dismissed by the government's own motion, and subsequently the government superseding the indictment S6-91-358."  (Pet. at 3.) However, the Petitioner also stated that he plead guilty to a racketeering charge and a conspiracy to commit murder, both of which were included in the request for his extradition.  (*Id*.)  Although the Petitioner may have plead guilty to an indictment which was not the original indictment used in his extradition, the law only protects the Petitioner to the extent that he would not be tried for any other crime than that for which he was extradited.  For these reasons, the Petitioner is not protected by the rule of speciality created by *Rauscher* or Article IV of the Extradition Treaty.

**CONCLUSION**

For the reasons stated above, Magistrate Judge Malachy E. Mannion's Report and

Recommendation will be adopted.  Petitioner's Objections will be overruled, and the

Petitioner's petition for a writ of habeas corpus will be dismissed.

An appropriate Order follows.


November 8, 2007                                    /s/ A. Richard Caputo
Date                                                A. Richard Caputo
                                                    United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MAXIMO A. REYES-VASQUEZ,

    Petitioner,

        v.

UNITED STATES ATTORNEY GENERAL,
EMBASSY OF THE REPUBLIC
DOMINICAN, & REPUBLIC OF SANTO
DOMINICO,

    Respondents.

NO. 3:07-CV-1460

(JUDGE CAPUTO)

(MAGISTRATE JUDGE MANNION)

## ORDER

**NOW**, this __8th__ day of November, 2007, upon review of Magistrate Judge

Malachy E. Mannion''s Report and Recommendation (Doc. 4), **IT IS HEREBY ORDERED**

that:

1.    The Report and Recommendation (Doc. 4) is **ADOPTED**.

2.    Petitioner's petition for a writ of habeas corpus (Doc. 5) is **DISMISSED**.

3.    The Clerk of the Court shall mark this case **CLOSED.**

                  /s/ A. Richard Caputo
                  A. Richard Caputo
                  United States District Judge